# IN THE UNITED STATES DISTRICT COURT
# CENTRAL DIVISION OF ILLINOIS
# URBANA DIVISION

| | |
|---|---|
| EGHE EGIEBOR, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, and DOUG COLLINS, the Secretary of the United States Department of Veterans Affairs, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT FOR JUDICIAL REVIEW

Plaintiff, Eghe Egiebor, MD ("Dr. Egiebor" or "Plaintiff"), by and through his attorneys, Goldberg Law Group, LLC, pursuant to 5 U.S.C. §§ 701-706, brings his Complaint for Judicial Review against the United States Department of Veterans Affairs and its Secretary, Doug Collins. In support thereof, Plaintiff hereby states as follows:

### INTRODUCTION

1.   This is an action for judicial review of the final administrative decision dated January 24, 2025 of the United States Department of Veterans Affairs revoking Dr. Egiebor's clinical privileges ("Final Decision") at the VA Illiana Healthcare System ("Hospital"). *See* **Exhibit A,** a true and accurate copy of the Final Decision.

2.   Dr. Egiebor seeks judicial review of the decision as it is arbitrary and capricious, an abuse of discretion, unsupported by substantial evidence, and was obtained without procedures required by law, rule or regulation.

1

3.      Dr. Egiebor seeks declaratory and injunctive relief, attorney's fees and costs, and that his professional record be cleared.

## THE PARTIES

4.      The Plaintiff, Dr. Egiebor, is an individual residing in Indianapolis, Indiana and is a physician licensed in the State of Illinois to practice medicine. Dr. Egiebor has been licensed in Illinois since 2004 and his license has been in good standing at all times.

5.      The Defendant, United States Department of Veterans Affairs (the "VA") by the United States Attorney General, Pamela Bondi, has its office in Washington D.C.  The VA is an executive agency of the United States government.

6.      The Defendant, Doug Collins, the Secretary of the Department of Veterans Affairs (the "Secretary"), has his office in Washington D.C.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this mater pursuant to 28 U.S.C. §1331 and 5 U.S.C. §§ 701-706.

8.      The Central District of Illinois, Urbana Division is the proper venue for this action pursuant to 28 U.S.C. §1391(b)(2) in that a substantial portion of the events giving rise to Plaintiff's claims occurred within this district and division.

## FACTUAL BACKGROUND

9.      Dr. Egiebor was employed at the VA as a physician in the Urgent Care Clinic ("UCC") run by the VA Illiana Healthcare System from January of 2018 until April 24, 2024.

10.     Dr. Egiebor's clinical privileges were revoked effective February 12, 2024.

11.     From 2018 through October 2021, Dr. Egiebor's clinical privileges at the Hospital were in good standing and his privileges to admit and treat patients were routinely renewed every

two years based upon the recommendation of the Medical Staff and approval of the Hospital's Board of Directors.

### *The Summary Suspension*

12. On or around March 30, 2023, Dr. Egiebor received a letter from the Acting Medical Center Director ("Director"), Jon E. Beidelschies, summarily suspending his clinical privileges effective immediately due to "findings from the investigation of [Dr. Egiebor's] clinical performance" (hereinafter, the "Summary Suspension Notice").

13. The Summary Suspension Notice alleges that Dr. Egiebor did not conduct a physical examination on three (3) patients – Patient A, B and C.[1]

14. The Summary Suspension Notice provides that the investigation will be completed as expeditiously as possible with the goal to accomplish it within thirty (30) calendar days.

15. During the course of the investigation, Dr. Egiebor's clinical privileges remained suspended from March 30, 2023 through February 12, 2024, at which time his clinical privileges were revoked.

16. The Medical Staff of the Hospital have adopted certain bylaws outlining requirements and procedures for their governance and operations known as the Bylaws and Rules of the Medical Staff of Veterans' Health Administration ("VHA"), VA Illiana Health Care System, Danville, Illinois (hereinafter the "Bylaws"). *See* **Exhibit B,** a true and accurate copy of the Bylaws.

17. Further, the Medical Staff at the Hospital organizes itself for self-governance in conformity with the laws, regulations and policies governing the Department of Veterans Affairs, Veterans Health Administration, as well as the Bylaws and associated rules.

---

[1] For confidentiality reasons, the patients will be referred to as "Patient A, B and C."

### *The Administrative Investigation Board ("AIB") Inquiry*

18. On or around March 27, 2023, an Administrative Investigative Board ("AIB") was appointed to conduct an administrative investigation regarding the clinical care concerns raised in the Summary Suspension Notice.

19. Pursuant to Article IX, Section 9.01 of the Bylaws, whenever there are concerns that a practitioner has demonstrated substandard care, professional (clinical) misconduct, or professional (clinical) incompetence, the Chief of the Practitioner's clinical service, the Chair of the Clinical Executive Board, the Chief of Staff, or the Medical Center Director may initiate a preliminary fact-finding. *See* **Exhibit B,** Article IX, Section 9.01 (1).

20. Further, when the above-referenced concerns are raised, further review may result in a fact-finding or administrative investigation. *Id.,* Section 9.01 (2).

21. The process for AIB investigations is governed by VA Handbook 0900 – Administrative Investigation Boards and Factfindings.

22. An AIB investigation is "a type of administrative investigation under VA Directive 0700…for collecting and analyzing evidence, ascertaining facts and documenting complete and accurate information regarding matters of interest to the VA. This type of administrative investigation requires the most documentation and has substantial procedural requirements." *Id.*, Chapter 1, Section 2(b).

23. Once an AIB is commenced, a "Charge Letter" is issued which formally appoints the members of the AIB Panel ("AIB Panel") and defines the scope of the investigation. *Id.,* Chapter 3, Section 3.

24. After the investigation is conducted, the AIB Panel prepares an AIB Investigative Report ("AIB Report"). *Id.*, Chapter 7, Section 1.

25. The AIB Report sets forth the Panel's findings of fact, conclusions, and evidence upon which the findings are based. *Id.,* Section 2-3.

26. The AIB Panel has authority to make findings of fact and conclusions, and provide recommendations about a proposed outcome (if authorized by the Charge Letter). *Id.,* Chapter 3, Section 6.

27. During the investigation, Dr. Egiebor and nine witnesses, were interviewed by the AIB Panel.

28. The AIB is an *ex parte* proceeding and the practitioner under investigation does not have the right to be present for the investigative process or the interviews conducted by the AIB Panel.

### The Notice of Proposed Revocation of Privileges

29. On or around February 12, 2024, Dr. Egiebor received a Proposed Revocation of Privileges ("Notice of Proposed Revocation") from the Chief of Staff, Zahoor Waseem, M.D. ("Chief of Staff").

30. The Notice of Proposed Revocation informed Dr. Egiebor that the Executive Committee of the Medical Staff ("ECMS") recommended his clinical privileges be revoked based on the "substantiated findings" in the AIB Report.

31. The Notice of Proposed Revocation provides that if the recommended decision is implemented, Dr. Egiebor will be provided with the right to a Fair Hearing.

32. On or around May 29, 2024, the Executive Director of the Medical Center, Staci Williams, issued her Decision of the Proposed Revocation of Privileges ("Director's Decision").

33. The Director's Decision upheld the Notice of Proposed Revocation and notified Dr. Egiebor of his right to request a Fair Hearing within five (5) business days.

5

34.     Dr. Egiebor timely submitted a request for a Fair Hearing.

### *Hearing and Appeal Rights Under the Bylaws and VA Privileging Directive*

35.     The Bylaws in effect during the relevant time period were approved in March 2023. *See* **Exhibit B.**

36.     The Bylaws are contractual in nature and establish the rights and obligations of the Hospital and members of the Medical Staff. As part of the consideration for the use of the Hospital's facilities, the Bylaws set forth the Medical Staff's obligation to ensure quality medical care, endeavor to provide a high level of professional performance, and to supervise enforcement of the Hospital's Rules and Regulations. Additionally, the Bylaws provide the process and conditions under which the Hospital is permitted to conduct professional review and take corrective action.

37.     A professional review action is generally a recommendation or action by a hospital or health care entity related to "substandard care, professional misconduct, or professional incompetence" of a physician that adversely affects the clinical privileges or membership of the physician (*e.g.,* revocation of privileges, denial of appointment and/or reappointment; reduction in clinical privileges for greater than 30 calendar days; resignation; surrender of privileges, or acceptance of privilege reduction during an investigation or to avoid an investigation). *Id.*, at Article IX; 45 C.F.R. § 60.3.

38.     A revocation of clinical privileges, as set forth in the Notice of Proposed Revocation, is a professional review action under the Bylaws and 45 C.F.R. § 60.3.

39.     Article X of the Bylaws and VHA Privileging Directive 1100.21 (Standard Operating Procedure P27), govern a practitioner's Fair Hearing and appellate review rights when an adverse action is taken.

40. Pursuant to the Bylaws, a proposed action to revoke a practitioner's privileges must be made in accordance with VHA Directive 1100.19, which was recently superseded by VHA Directive 1100.21(1), SOP-P27 (hereinafter referred to as "VA Privileging Directive"). *See* **Exhibit B,** Article X, Section 10.02 (6).

41. The VA Privileging Directive outlines the Fair Hearing process for adverse privileging actions taken against Title 38 Privileged Practitioners, including revocation of privileges. *See* **Exhibit C,** a true and accurate copy of the VA Privileging Directive, effective December 5, 2023.

42. If the practitioner does not agree with the privileging action, a request for hearing may be submitted to the Medical Center Director. *Id.,* Section 2(c)(5).

43. If a Fair Hearing is requested, the Medical Center Director must appoint a review panel of three professionals to conduct a review and hearing on the privileging action. *Id.,* Section 2(c)(6).

44. During the Fair Hearing, the practitioner has the right to: (1) be present throughout the evidentiary proceedings; (2) be represented by an attorney…; (3) if the practitioner is represented, this individual is allowed to act on behalf of the practitioner including questioning and cross-examination of witnesses; (4) receive all evidence relied upon in bringing the privileging action; (5) present evidence including calling witnesses; and (6) cross-examination of witnesses. *Id.,* Section 2(c)(7).

### *Fair Hearing*

45. On July 24, 2024, a Notice of Fair Hearing was issued, appointing a three-person panel (hereinafter referred to as the "Panel") to conduct a hearing on the Director's Decision on August 27, 2024.

46. The Fair Hearing was subsequently continued and conducted on October 1, 2024 and October 31, 2024.

47. During the course of the Fair Hearing the following occurred:

   (a) Over the objection of counsel for Dr. Egiebor, Patients A, B, and C were not permitted to testify at the Panel Hearing;

   (b) Statements from Patients A, B, and C, which were hearsay, were improperly admitted into evidence;

   (c) Dr. Egiebor filed a motion for production of documents, requesting medical records associated with the patients referenced in the AIB Report, which was denied by the Panel;

   (d) Dr. Egiebor objected to the Panel calling Dr. Vasanthan Naidu as a "panel witness," as the VA Privileging Directive does not permit the Panel to independently call their own witnesses during the proceeding;

   (e) Over the objection of counsel for Dr. Egiebor, the Panel did not allow rebuttal witnesses to testify to contradict the testimony of Dr. Tuyet Abraham;

   (f) The Panel's Report and Recommendation made ancillary findings that were not contained in the AIB Report or the Proposed Notice of Revocation;

   (g) The Panel failed to substantively consider any of the evidence or testimony presented by Dr. Egiebor's witnesses during the Fair Hearing.

48. On November 21, 2024, the Panel issued their Report and Recommendation from the Fair Hearing, which upheld the recommendation for revocation of privileges.

49. On or around December 5, 2024, the Acting Executive Director, issued a decision upholding the Panel's decision to revoke Dr. Egiebor's privileges.

50. Dr. Egiebor submitted an appeal of the December 5, 2024 decision to the VISN Director.

51. On or around January 24, 2025, the VISN Director issued a Final Decision upholding the revocation of Dr. Egiebor's privileges. *See* **Exhibit A.**

## COUNT I – JUDICIAL REVIEW

52. Dr. Egiebor repeats and realleges the allegations set forth in Paragraph 1 through 51 above, as if fully set forth herein.

53. Upon judicial review by a District Court, the Final Decision regarding revocation of Dr. Egiebor's clinical privileges may be reversed when it is found to be: (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (b) contrary to constitutional right, power, privilege, or immunity; (c) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (d) without observance of procedure required by law; (e) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (f) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. *See* 5 U.S.C. § 706.

54. Here, the Final Decision, as recommended by the Fair Hearing Panel, must be reversed as it is violative of 5 U.S.C. § 706, as well as due to the following reasons:

(a) Over the objection of counsel for Dr. Egiebor, Patient A, B, and C were not permitted to testify at the Panel Hearing;

(b) The admission of hearsay statements from Patient A, B and C was improper, violated Dr. Egiebor's right to cross-examination of witnesses, his right to a fair hearing, his due process rights, and resulted in great prejudice to Dr. Egiebor;

(c) The findings in the Final Decision were contrary to the weight of the evidence, as Dr. Egiebor presented evidence proving that Patient A, B, and C's statements were not truthful;

(d) Dr. Egiebor filed a motion for production of documents, requesting medical records associated with patients referenced in the AIB Report, which was denied by the Panel. This decision deprived Dr. Egiebor of his right to present a fair and full defense at the Fair Hearing;

(e) Dr. Egiebor objected to the Panel calling Dr. Vasanthan Naidu as a "panel witness," as the VA Privileging Directive does not permit the Panel to independently call their own witnesses;

(f) Over the objection of counsel for Dr. Egiebor, the Panel did not allow rebuttal witnesses to testify to contradict the testimony of Dr. Tuyet Abraham;

(g) The Panel's report and recommendation made ancillary findings that were not contained in the AIB Report or the Proposed Notice of Revocation;

(h) The Panel failed to substantively consider any of the evidence or testimony presented by Dr. Egiebor's witnesses during the Fair Hearing.

(i) The discipline of revocation of clinical privileges was harsh and excessive in light of the evidence and mitigating factors.

**PRAYER FOR RELIEF**

The Plaintiff, Eghe Egiebor, M.D., respectfully requests that this Honorable Court reverse the decision to revoke his clinical privileges, award him reasonable attorneys' fees and costs in bringing this action; and any further relief this Honorable Court deems just and proper.

Dated: April 3, 2025

                                              Respectfully Submitted,
                                              EGHE EGIEBOR, MD

                                              By: ___*/s/ Melissa M. Cuddington*___

Michael K. Goldberg
Melissa M. Cuddington
Goldberg Law Group, LLC
120 S. Riverside Plaza, Suite 1675
Chicago, Illinois 60606
(312) 930-5600
mike@goldberglawoffice.com
melissa@goldberglawoffice.com

*Counsel for Eghe Egiebor, M.D.*

11